UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAHER SUAREZ,

          Plaintiff,

    v.

MATTHEW CATE, et al.,

          Defendants.

No.  2:12-cv-2048-KJM-EFB P

ORDER AND FINDINGS AND
RECOMMENDATIONS

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

U.S.C. § 1983.  He claims that defendants violated his due process and equal protection rights

under the Fourteenth Amendment in connection with the designation of plaintiff as a validated

gang member.  The matter is currently before the court on defendants' motion to dismiss for

failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF

No. 22.

I.  PLAINTIFF'S ALLEGATIONS

      A.  Alleged Facts

      Plaintiff alleges the following facts.   On June 28, 2009 prison staff at High Desert State

Prison ("HDSP") received information about racial unrest between the Northern Hispanic and

white populations in Facility C of the prison.  ECF No. 1 at 4.  As a result of this information,

Facility C was placed on lockdown status and staff completed a full facility search.  *Id.*  Plaintiff

is a Northern Hispanic inmate and was housed in Facility C at this time.  *Id.*  During the

1

1   lockdown, plaintiff's cell was searched and no contraband was found.  *Id.*  Plaintiff also

2   participated in a "pre-unlock interview" where he signed an "unlock chrono" stating that he

3   would continue to positively program without committing acts of violence and that he did not

4   know of any information regarding the racial unrest.  *Id.*

5          On August 4, 2009, between forty and fifty Northern Hispanic inmates, including

6   plaintiff, were required by prison staff to undergo a strip search and to then line up along a wall

7   outside their building.  *Id.* at 5.  While outside, a correctional officer read off a list of names of

8   inmates who were to be taken to the prison's Administrative Segregation Unit ("ASU") to

9   undergo a gang membership validation investigation.  *Id.*  Plaintiff's name was read off of this list

10  and plaintiff was then sent to the gym building.  *Id.*  There, plaintiff's shirt was cut off of him, he

11  was examined by a nurse, and had full body pictures taken by officers from the Institutional Gang

12  Investigators ("IGI") unit.  *Id.*  Plaintiff was then placed on a transport bus with other Northern

13  Hispanics and taken to the ASU.  *Id.*  When he arrived at the ASU, plaintiff was given a

14  document that is referred to as a 114-D lock up order.  The order stated that he was placed in the

15  ASU because the IGI unit had determined that sufficient evidence existed to validate him as an

16  associate or member of the Northern Structure prison gang.  *Id.*  Defendant St. Andre, the head of

17  the IGI unit, ordered plaintiff's placement in the ASU.  *Id.*  Plaintiff believes that he was targeted

18  for validation only because he is labeled as a Northern Hispanic.  *Id.*

19         On August 13, 2009, plaintiff appeared before defendants Gower and Williams, who were

20  part of the Institutional Classification Committee ("ICC").  *Id.*  Gower and Williams referred

21  plaintiff to the Classification Staff Representative ("CSR") for a 180-day extension in ASU.  *Id.*

22  During his appearance before the ICC, plaintiff asked about what evidence was being used to

23  place him in the ASU and asserted that he should be placed back into the general population if an

24  investigation into whether plaintiff was affiliated with a gang was ongoing.  *Id.*  In response,

25  Gower told plaintiff that there was "plenty of evidence" to validate plaintiff as a gang affiliate and

26  that an investigation into the matter had already concluded.  *Id.*  Gower also told plaintiff that he

27  was to remain in the ASU and that the IGI would soon give plaintiff the evidence used to validate

28  him.  *Id.*  The ICC noted that the investigation into plaintiff's gang affiliation had shown that

1    there was sufficient evidence to support a submission of a validation package to the Office of

2    Correctional Safety ("OCS").  *Id.*

3         On September 17, 2009, defendant Harrison, a correctional officer and assistant IGI,

4    disclosed to plaintiff vague and unspecific information that had been used to validate plaintiff as a

5    gang member.  *Id.* at 6.  This disclosure took place in the law library.  *Id.*  During this meeting,

6    Harrison gave plaintiff the three confidential disclosure forms that had been used as evidence

7    supporting the validation of plaintiff as a gang member; the first document was dated June 17,

8    2009, the second document was dated August 31, 2009, and the third document was dated

9    September 3, 2009.  *Id.*  Harrison told plaintiff that if plaintiff disagreed with the information in

10   the three pieces of evidence, plaintiff could write down his arguments in rebuttal and Harrison

11   would come and pick it up the next day.  *Id.*

12        On September 18, 2009, Harrison picked up plaintiff's written rebuttal.  *Id.*  Plaintiff was

13   not afforded an actual interview with the critical decision maker, St. Andre, or anyone else;

14   plaintiff was only allowed to submit the written rebuttal.  *Id.*  On the same day, an unspecified IGI

15   officer allegedly reviewed the rebuttal and found that it lacked merit.  *Id.*  On September 24,

16   2009, St. Andre sent plaintiff's validation package to the OCS Special Services Unit ("SSU") for

17   official validation or rejection.  *Id.*

18        On October 8, 2009, defendants Marquez and Harrison, both SSU agents, validated

19   plaintiff as an associate of the Northern Structure prison gang.  *Id.* at 7.  However, they failed to

20   indicate whether they had found plaintiff to be a current active gang associate, which plaintiff

21   alleges is necessary in order to segregate plaintiff from the general population indefinitely.  *Id.*

22        On January 22, 2010, Officer Levenson served plaintiff with a 114-D lock up order

23   informing him that he was being retained in the ASU due to the SSU's validation of him as an

24   associate of the Northern Structure prison gang.  *Id.*  Plaintiff attempted to give Officer Levenson

25   a 114-D supplement but was told that he had to send it to his correctional counselor.  *Id.*

26        On January 24, 2010, plaintiff sent his 114-D supplement via mail to defendants Furtado

27   and Tamplen, who are both correctional counselors.  *Id.*  In the supplement, plaintiff requested

28   that the supplement be placed in the record and his California Department of Corrections and

1 Rehabilitation ("CDCR") file and that the document be considered by decision makers.  He also

2 requested that an investigative staff assistant be provided to him, and all information,

3 documentation, and witnesses relating to the 114-D order be provided to him.  *Id.*

4      On January 25, 2010, Officer McGuire came to plaintiff's cell and asked plaintiff if he

5 wanted to sign his 114-D order again.  *Id.*  Plaintiff asked why he was being issued the order

6 again and Officer McGuire replied, saying "I don't know, it's the same one you already got, do

7 you want to sign it again."  *Id.*  Plaintiff stated that he did not want to sign it again and asked

8 Officer McGuire if he could give him the 114-D supplement.  *Id.*  Officer McGuire said no to

9 plaintiff's request and when plaintiff asked about who he should send the supplement to, Officer

10 McGuire stated that he did not know.  *Id.*  Officer McGuire never asked plaintiff if he wanted to

11 sign the waiver portion of the 114-D order.  *Id.*

12      On January 28, 2010, plaintiff appeared before defendants Davey, Tamplen, and Furtado

13 at an ICC hearing.  *Id.*  During this hearing, the defendants decided to refer plaintiff to the CSR

14 for an adverse transfer to the Security Housing Unit ("SHU") at either Pelican Bay State Prison or

15 Corcoran State Prison for an indeterminate term due to plaintiff's gang validation.  *Id.*  Also

16 during this hearing, plaintiff asked the defendants about the 114-D hearing he was supposed to

17 have prior to going before the ICC.  *Id.*  The defendants told plaintiff that the 114-D hearing had

18 been held without him because he refused to sign the 114-D order on January 25, 2010.  *Id.*

19 Plaintiff then asked Furtado and Templen if they had received his 114-D supplement that he had

20 tried to send to them on January 24, 2010 via institutional mail.  *Id.* at 7-8.  Both defendants

21 denied ever receiving the document.  *Id.* at 8.  Plaintiff then asked if he could submit the

22 document to them right then and have it considered during the hearing.  *Id.*  The defendants

23 denied this request without consideration or deliberation.  *Id.*  Plaintiff further requested that he

24 be given investigative staff assistance, all information and documents relating to his 114-D order,

25 the ability to call witnesses, a 114-D hearing, and a chance to refute his gang validation.  *Id.*  The

26 defendants denied all of these requests.  *Id.*  Finally, plaintiff informed the defendants that he

27 "was not found to be a 'current active' prison gang affiliate and cannot be placed in the SHU for

28 /////

an indeterminate term." *Id.* The defendants told plaintiff that he could debrief if he wanted to be removed from the ASU or SHU. *Id.*

On February 22, 2010, defendant Kokkonen, a CSR, endorsed plaintiff to the Pelican Bay State Prison SHU for an indeterminate term due to plaintiff's gang validation even though plaintiff was never labeled as a currently active gang affiliate by the IGI or SSU. *Id.* On March 30, 2011, plaintiff was transferred from the ASU at HDSP to the Corcoran State Prison SHU, where he currently resides. *Id.*

On April 7, 2011, plaintiff appeared before defendants Hubbard, Garcia, and White,[1] all of whom were members of the ICC that routinely retained plaintiff in the SHU due to his validation as a gang affiliate. *Id.* During this appearance, plaintiff requested that a meaningful review of his gang validation take place and that he be given a chance to refute his validation. *Id.* The defendants informed plaintiff that gang validations are not reviewed by the ICC and that anything plaintiff would say about it would be futile since he has already been validated. *Id.* The defendants further explained to plaintiff that gang validations are reviewed every six years and that "plaintiff would have to wait until his inactive review, file a writ or lawsuit, or he can debrief." *Id.*

Plaintiff has received several ICC reviews regarding his ASU/SHU status and has received several endorsements from the CSR that he be retained in ASU/SHU. *Id.* at 8-9. Plaintiff asserts that each ICC hearing and CSR endorsement was made in a "rote and perfunctory manner" because they did not contain "any individualized finding whether or not plaintiff was a gang associate and/or posed any real threat to the safety of others and institutional safety." *Id.* Plaintiff alleges that he has never been charged with a violation of California Code of Regulations ("Cal. Code Regs.") Title 15 section 3023, which concerns gang activity. *Id.* at 9.

Plaintiff asserts that the three pieces of evidence used to support his gang validation "are false, unreliable, and insufficient." *Id.* Plaintiff further asserts that "if defendants were required

---

[1]   At the time of the issuance of these findings and recommendations, the record indicates that defendant White has yet to receive service of process in this case and defendants do not seek their motion to dismiss on his behalf. ECF No. 22-1 at 10, n.1.

to substantiate the allegations with actual evidence, defendants would be unable to produce any substantial evidence." *Id.* Plaintiff also claims that the validation package used to validate him "does not contain 'three reliable independent sources' of factual information with one 'direct link' to a validated gang affiliate" showing that plaintiff "knowingly" promoted, furthered, or assisted a prison gang in some unlawful act or acts of serious misconduct as is required by the rules and regulations governing inmate validation. *Id.* at 12.

With respect to the first piece of evidence, the confidential statement dated September 3, 2009, plaintiff asserts that it is false, unreliable, and insufficient because it does not: (1) articulate how or why this material is reliable evidence of plaintiff's prison gang association; (2) state how more than one source independently provided the same information; (3) state how the evidence was corroborated; and (4) state how and why plaintiff's last name and CDCR number are indicative of prison gang association. *Id.* at 9. Plaintiff further asserts that this evidence is hearsay, came from the same source as the second piece of evidence, does not meet the criteria for a confidential source, alleges no illegal or serious conduct or gang activity on plaintiff's part, and can be categorized as a "laundry list," making it an inappropriate source item for validation purposes. *Id.* at 9-10.

With respect to the second piece of evidence, the confidential statement dated August 31, 2009, plaintiff asserts that it is false, unreliable, and insufficient because it does not: (1) show how more than one source independently proved the same information; (2) state how part of the information provided by the source had already been proven true; (3) state whether the information was first hand or hearsay; (4) state whether the documentation or other circumstances surrounding the event would lead the decision maker to believe the information true; and (5) state whether the informant was asked if he had a motive to lie. *Id.* at 10. Plaintiff further asserts that this evidence came from the same source as the first piece of evidence, provides insufficient information to meet the requirements of Cal. Code Regs. tit. 15, section 3321(b)(3)(B), alleges no illegal or serious conduct or gang activity on plaintiff's part, does not establish a direct link to another validated gang member, and can be categorized as a "laundry list," which is insufficient as a source item for validation. *Id.* at 10-11.

1    With respect to the third piece of evidence, the confidential statement dated June 6, 2009,

2    plaintiff asserts that it is false, unreliable, and insufficient because it does not: (1) ) show how

3    more than one source independently proved the same information; (2) show how the statement's

4    source incriminated himself when the debriefing process poses no risk of incrimination; (3) show

5    how some of the information was corroborated; (4) state whether the information was first hand

6    or hearsay; (5) state whether the documentation or other circumstances surrounding the event

7    would lead the decision maker to believe the information true; and (6) state whether the debriefer

8    was asked if he had a motive to lie.  *Id.* at 11.  Plaintiff further asserts that this evidence provides

9    minimal information insufficient to meet the requirements of Cal. Code Regs. tit. 15, section

10   3321(b)(3)(B), alleges no illegal or serious conduct or gang activity on plaintiff's part, does not

11   establish a direct link to another validated gang member, and can be categorized as a "laundry

12   list," which cannot be used as a source item for validation.  *Id.*

13   Plaintiff further claims that the second and third pieces of evidence violated the *Castillo*[2]

14   agreement, which requires certain evidentiary sources to be counted as a single piece of evidence

15   for purposes of gang validation.  *Id.* at 13.  Plaintiff contends that defendant Gower violated

16   plaintiff's equal protection rights when he "intentionally and arbitrarily" refused to combine

17   evidence items two and three into a single validation source when plaintiff appealed the

18   validation determination.  *Id.*  Plaintiff alleges that Gower had previously combined two similar

19   sources for another inmate, Valentine, who was similarly situated to plaintiff.  *Id.*  Plaintiff asserts

20   that Gower intentionally refused to combine the two evidentiary sources because it would have

21   resulted in plaintiff's validation packet being one source shy of the three necessary to validate

22   him as a gang affiliate under the relevant rules and regulations.  *Id.*

23   Plaintiff denies that he is affiliated with a gang and states that he does not pose a threat to

24   institutional safety.  *Id.* at 12.  Plaintiff claims that none of the defendants acted to designate

25   plaintiff as a current gang associate pursuant to Cal. Code Regs. tit. 15, section 3032 prior to

26   placing plaintiff in the SHU for an indeterminate term.  *Id.*  Plaintiff further alleges that he has not

27

28   [2] *Castillo v. Terhune*, No. C 94–2847–MJJ (N. D. Cal. 1994).

violated Cal. Code Regs. tit. 15, sections 3000 or 3032, both of which concern gang activities, on behalf of any prison gang.  *Id.*  None of the defendants have formally charged plaintiff with violating Cal. Code Regs. tit. 15, sections 3000 or 3032 using a form 115 Rules Violation Report.  *Id.*  Plaintiff claims that all supervisory defendants participated in the alleged acts through the enforcement of the validation policies or by turning a blind eye to their subordinates' abuse of those policies.  *Id.*

At all times relevant to plaintiff's claims, defendants have required that plaintiff either debrief or remain in the SHU.  *Id.*  However, plaintiff cannot successfully debrief because he is not a gang affiliate and has no gang information to divulge.  *Id.*  Plaintiff states that he refuses to manufacture information against other inmates to obtain his release from the SHU and has a fear that debriefing may jeopardize his safety.  *Id.* at 12-13.

Plaintiff's placement in ASU/SHU for validation was done for administrative reasons, not disciplinary reasons; however, defendants' rules and regulations treat inmates placed in the ASU/SHU for non-disciplinary reasons the same as inmates placed in the ASU/SHU for disciplinary reasons.  *Id.* at 13.  This treatment has resulted in plaintiff receiving the same minimal privileges and property that inmates subject to disciplinary segregation receive.  *Id.* at 13-14.  Plaintiff asserts that these restrictions do not serve a valid penological purpose for inmates, such as plaintiff, who have been sent to ASU or SHU for purposes of administrative segregation.  *Id.*  Plaintiff claims that the practice of placing the same restrictions on administratively segregated inmates as are placed on disciplinarily segregated inmates violates his equal protection rights.  *Id.* at 14.

B. Plaintiff's Claims

Based on the facts alleged above, plaintiff asserts the following eight claims:

1. Claim One

Plaintiff contends that his retention in the SHU violated his Federal Due Process Rights under the Fourteenth Amendment.  *Id.* at 15.  Specifically, he contends that he was denied due process when defendants:  (1) placed him in the SHU "on the basis of false, unreliable, and insufficient information" that did not meet the required "some evidence" standard; (2) failed to

1   give plaintiff an opportunity to present his views to the officials making the validation

2   determination; (3) "failed to provide plaintiff with an interview with the critical decision maker

3   prior to validating him as a gang associate"; (4) failed to provide plaintiff with a meaningful

4   classification review; (5) incorrectly labeled plaintiff as a gang associate and allowed him to be

5   released only by divulging information he does not have; and (6) placed and retained plaintiff in

6   the SHU without first determining whether plaintiff was a current active gang associate. *Id.*

7                   2.   Claim Two

8           Claim Two, which plaintiff labels "State Created Liberty Interest," is also a due process

9   claim.  In it, he again claims that he was deprived of rights protected under the Fourteenth

10  Amendment when defendants: (1) placed plaintiff in the ASU based on false allegations that they

11  had "sufficient evidence" of gang association when they knew that they did not; (2) failed to give

12  plaintiff an interview regarding the evidence used to validate him; (3) failed to give plaintiff the

13  staff assistance he requested; (4) failed to give plaintiff a full and fair hearing in order to present

14  evidence and witnesses and an opportunity to refute his gang validation prior to the imposition of

15  a SHU term; (5) refused to release plaintiff from the SHU even though plaintiff poses no threat to

16  safety and security; (6) used unreliable information to retain plaintiff in the SHU; (7) placed and

17  retained plaintiff in the SHU without first determining whether plaintiff was a current active gang

18  member; and (8) failed to provide procedural protections when alleging that plaintiff was

19  involved in gang activity.  *Id.* at 15-16.

20                  3.   Claim Three

21          In his third claim plaintiff alleges that his placement and retention in the SHU violates the

22  Due Process Clause of the California Constitution.  *Id.* at 16.

23                  4.   Claim Four

24          Plaintiff alleges in Claim Four that defendants denied him equal protection of the law

25  protected by the Fourteenth Amendment when they intentionally treated him differently than

26  other similarly situated inmates by refusing to combine the second and third pieces of evidence

27  used to validate plaintiff into a single evidentiary source.  *Id.* at 17.

28  /////

9

5. Claim Five

Claim Five is a First Amendment right to association claim contending that plaintiff's rights were violated when he was placed in the SHU based on regulations and policies that classify as impermissible associations with other prisoners even when such associations are not in furtherance of prison gang activity and does not violate any law or prison rules and regulations. *Id.*

6. Claim Six

Plaintiff contends in Claim Six that the supervisory defendants acted with deliberate indifference to plaintiff's rights by failing to properly train and supervise their subordinates and to act to remedy those violations when they had constructive knowledge that the violations were occurring. *Id.* at 17-18.

7. Claim Seven

Claim Seven is another equal protection claim. Plaintiff alleges that defendants violated his equal protection rights under the Fourteenth Amendment by intentionally treating him like an inmate who has committed a disciplinary infraction without first charging plaintiff with a disciplinary offense and denying him the privileges and property allowed to inmates who are free of disciplinary punishment when there is no reasonable or legitimate penological interest in imposing such restrictions. *Id.* at 17.

8. Claim Eight

Claim Eight appears to be another due process claim. Plaintiff alleges that defendants violated his due process rights under the Fourteenth Amendment by intentionally treating him like an inmate who has committed a disciplinary infraction without first charging plaintiff with a disciplinary offense and denying him the privileges and property allowed to inmates who are free of disciplinary punishment when there is no reasonable or legitimate penological interest to do so. *Id.* at 17-18.

C. Requested Relief

Plaintiff seeks injunctive relief in the form of his release from the SHU, the removal of references to plaintiff being affiliated with a prison gang from his records, and the cessation of

10

1    certain practices by defendants. *Id.* at 20. Plaintiff also seeks a declaratory judgment that

2    "defendants' acts and practices described [in the complaint] violate plaintiff's rights." *Id.* at 4.

3    Finally, plaintiff seeks compensatory and punitive damages.

## II.  STANDARDS FOR A MOTION TO DISMISS

5            Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for

6    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

7    considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true

8    the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe

9    the pleading in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236

10   (1974).  In order to survive dismissal for failure to state a claim a complaint must contain more

11   than "a formulaic recitation of the elements of a cause of action;" it must contain factual

12   allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v.*

13   *Twombly*, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement

14   [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon

15   which it rests."'"  *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp.*, 550 U.S. at 554, in turn

16   quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## III.  DEFENDANTS' MOTION TO DISMISS

18           Defendants contend that all eight of plaintiff's claims fail to state a claim for which relief

19   may be granted, that plaintiff has not complied with the Government Claims Act with respect to

20   his state law claims, and that defendants are entitled to qualified immunity, thus making dismissal

21   of the entire complaint proper.  ECF No. 22-1 at 10.

### A.  Federal Due Process

23           Construed liberally,[3] it appears that plaintiff's first, second, and eighth claims all claim a

24   violation of plaintiff's Federal due process rights in connection with the procedures used to

25   validate and place plaintiff into administrative segregation.  Accordingly, the court treats these

---

27          [3] "In civil rights cases where the plaintiff appears pro se, the court must construe the
     pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los*
28   *Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

1    three alleged claims as part of a single due process claim.  With respect to this claim, defendants

2    argue that the allegations reveal that there was no liberty interest at stake and that there was at

3    least "some evidence" to support the validation decision.

4           Under the Fourteenth Amendment to the United States Constitution, no state shall deprive

5    any person of life, liberty, or property without due process of law.  A litigant alleging a due

6    process violation must first demonstrate that he was deprived of a liberty or property interest

7    protected by the Due Process Clause and then show that the procedures attendant upon the

8    deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490

9    U.S. 454, 459-60 (1989).  A protected liberty interest may arise from either the Due Process

10   Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'"

11   or from "an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545

12   U.S. 209, 221 (2005) (citations omitted).  Prisoners retain their right to due process subject to the

13   restrictions imposed by the nature of the penal system.  *Wolff v. McDonnell*, 418 U.S. 539, 556

14   (1974).  However, a prisoner has a liberty interest protected by the Due Process Clause only

15   where a restraint "imposes atypical and significant hardship on the inmate in relation to the

16   ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

17          Generally, placement in administrative or disciplinary segregation, in and of itself, does

18   not implicate a protected liberty interest.  *See, e.g.*, *Sandin*, 515 U.S. at 486 ("[D]isciplinary

19   segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in

20   administrative segregation and protective custody," and therefore, does not violate due process);

21   *Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (holding that pre-sentencing prisoner had

22   no liberty interest in being free from administrative segregation).  In *Sandin*, the United States

23   Supreme Court held that a thirty-day confinement in disciplinary segregation was "within the

24   range of confinement normally expected for one serving an indeterminate term of 30 years to

25   life," *Sandin*, 515 U.S. at 487, and did not "present a dramatic departure from the basic conditions

26   of [the inmate's] sentence."  *Id.* at 485.  Here, however, plaintiff alleges that he is being subjected

27   to an indefinite SHU term as a result of his validation as a gang affiliate, a much greater

28   deprivation than the one imposed in *Sandin*.  Furthermore, a number of courts have held that an

1   indeterminate term in the SHU implicates a state-created liberty interest.  *See, e.g.*, *Madrid v.*

2   *Gomez*, 889 F. Supp. 1146, 1271 (N.D. Cal. 1995) ("defendants may not confine prison gang

3   members in the SHU, nor hold them there on indeterminate terms, without providing them the

4   quantum of procedural due process required by the Constitution."); *Castro v. Prouty*, 1:09-CV-

5   01763-GBC PC, 2011 WL 529493 at *3 (E.D. Cal. Feb. 3, 2011) *aff'd*, 478 Fed. App'x 449 (9th

6   Cir. 2012) (citing *Wilkinson*, 545 U.S. at 223-25 (2005) (assuming that confinement in the SHU

7   for an indeterminate period implicates a liberty interest)); *see also Toussaint v. McCarthy*, 801

8   F.2d 1080, 1098 (9th Cir. 1986).  Accordingly, plaintiff's allegations are sufficient to show that

9   plaintiff's placement in the SHU for an indefinite term implicated a liberty interest such that

10  defendants were constitutionally required to provide plaintiff with certain minimal procedural due

11  process protections.

12          When placement in administrative segregation impairs an inmate's liberty interest, the

13  Due Process Clause requires prison officials to provide the inmate with "some notice of the

14  charges against him and an opportunity to present his views to the prison official charged with

15  deciding whether to transfer him to administrative segregation."  *Bruce v. Ylst*, 351 F.3d 1283,

16  1287 (9th Cir. 2003) (quoting *Toussaint*, 801 F.2d at 1099).  In addition to the notice and

17  opportunity for presentation requirements, due process requires that there be an evidentiary basis

18  for the prison officials' decision to place an inmate in segregation for administrative reasons.

19  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05. This standard

20  is met if there is "some evidence" from which the conclusion of the administrative tribunal could

21  be deduced.  *Hill*, 472 U.S. at 455; *Toussaint*, 801 F.2d at 1105.  The "some evidence" standard

22  applies to an inmate's placement in SHU for gang affiliation.  *See Bruce*, 351 F.3d at 1287-88.  In

23  making a determination under the "some evidence" standard, the court "do[es] not examine the

24  entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the

25  relevant question is whether there is any evidence in the record that could support the

26  conclusion.'"  *Id.* at 1287 (quoting *Hill*, 472 U.S. at 455-56).

27          In addition, there is authority for the proposition that the evidence relied upon to confine

28  an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due

process requirements.  *Madrid*, 889 F. Supp. at 1273-74; *see also Toussaint*, 926 F.2d at 803,

*cert. denied*, 502 U.S. 874 (1991) (considering accuracy of polygraph results when used as

evidence to support placement in administrative segregation); *Cato v. Rushen*, 824 F.2d 703, 705

(1987) (evidence relied upon by a prison disciplinary board must have "some indicia of

reliability").  When this evidence includes statements from confidential informants, such as is the

case here, the record must contain "some factual information from which the committee can

reasonably conclude that the information was reliable." *Zimmerlee v. Keeney*, 831 F.2d 183, 186

(9th Cir. 1987), *cert. denied*, 487 U.S. 1207 (1988).  The record must also contain "a prison

official's affirmative statement that safety considerations prevent the disclosure of the informant's

name." *Id.*  Defendants bear the burden of showing "some evidence" in the record to support an

administrative segregation decision and that evidence must have some indicia of reliability."

*Toussaint v. Rowland*, 711 F. Supp. 536, 542 (N.D. Cal. 1989), *aff'd in part, rev'd in part sub*

*nom*, *Toussaint*, 926 F.2d 800, *cert. denied*, 502 U.S. 874 (1991).  "Reliability may be established

by: (1) the oath of the investigating officer appearing before the committee as to the truth of his

report that contains confidential information, (2) corroborating testimony, (3) a statement on the

record by the chairman of the committee that he had firsthand knowledge of sources of

information and considered them reliable based on the informant's past record, or (4) an in

camera review of the documentation from which credibility was assessed." *Zimmerlee*, 831 F.2d

at 186-87.

Evaluation of a prisoner's due process challenge to his gang validation and related

housing first requires identification of the "prison official [who] was the critical decisionmaker,"

and a determination whether the prisoner "had an opportunity to present his views to that

official." *Castro v. Terhune*, 712 F.3d 1304, 1308 (9th Cir. 2013); *see also Castro v. Terhune*, 29

Fed. App'x 463, 465 (9th Cir. 2002) ("due process . . . require[s] . . . a meaningful opportunity to

present his views to the critical decisionmakers."); *Castro v. Terhune*, 237 Fed. App'x 153, 155

(9th Cir. 2007) (explaining the necessity of identifying "actual decisionmaker" as compared to an

official acting as an "assistant" or "rubber stamp").  "In the case of administrative segregation

founded upon positive gang validation, the official charged with deciding whether to transfer or

14

1    retain an inmate in administrative segregation is the IGI.  Thus, prior to validation as a gang

2    member, [plaintiff is] entitled to an 'informal nonadversary hearing' with an IGI."  *Stewart v.*

3    *Alameida*, 418 F. Supp. 2d 1154, 1165 (N.D. Cal. 2006) (citing *Toussaint*, 926 F.2d at 803; and

4    *Madrid*, 889 F. Supp. at 1276 ("[I]t is clear that the critical decisionmaker in the process is . . . the

5    IGI.")).[4]

6         Here, plaintiff alleges that defendant St. Andre, the head IGI, was the "critical

7    decisionmaker" who "ultimately approved" plaintiff's validation package.  ECF No. 1 at 6; ECF

8    No. 33 at 5.  The alleged facts, if true, would show that on August 4, 2009, plaintiff was given a

9    114-D lock up order "stating that he was placed in the ASU due to the IGI had determined there

10   was sufficient evidence to validate him as an associate/member of the Northern Structure Prison

11   Gang."  *Id.* at 5.  On September 17, 2009 defendant Harrison, an assistant IGI, met with plaintiff

12   in the prison's law library and disclosed to plaintiff the three pieces of evidence that were being

13   used to substantiate his validation package.  ECF No. 1 at 6.  During this meeting, Harrison told

14   plaintiff that he could submit a written rebuttal in opposition to these sources and give it to

15   Harrison the next day.  *Id.*  Plaintiff wrote a rebuttal and submitted it to Harrison the next day.  *Id.*

16   The IGI reviewed his rebuttal the same day it was submitted and determined that it did not have

17   any merit.  *Id.*  St. Andre "ultimately approved" plaintiff's validation package on September 26,

18   2009.  *Id.*

19        These above allegations show that the defendants adhered to the due process requirements

20   that plaintiff receive notice and an opportunity to be heard in the procedures used to validate

21   _____

22        [4] The court in *Madrid* rejected the notion that formal validation by the Special Services
     Unit ("SSU"), predecessor to the Law Enforcement Investigation Unit ("LEIU"), trumped the
23   decision-making authority of the IGI:

24        Although the SSU agent formally validates the inmate, it is clear that the critical
          "decisionmaker" is the IGI . . . . [T]he SSU plays a technically important but
25        substantively nominal role in the process.  Nor are we persuaded that IGIs are
          unaware of the significance of their role.  Given that inmates have an opportunity
26        to present their views to the IGI and the ICC, the failure to provide a hearing
          before the SSU officer does not violate due process.
27

28   *Madrid*, 889 F. Supp. at 1276; *accord Stewart*, 418 F. Supp. 2d at 1167.

1    plaintiff as a gang member and subsequently placing him in security housing.  Plaintiff received

2    notice that he was being investigated for gang member validation on August 13, 2009 and the

3    evidence upon which the allegations were based was divulged to him when he met with Harrison

4    on September 17, 2009.  Additionally, plaintiff's meeting with Harrison satisfied the requirement

5    that plaintiff receive an "informal nonadversary hearing" with an IGI.  *See Stewart*, 418 F. Supp.

6    2d at 1165.

7            Plaintiff argues in his opposition that he was never afforded an interview with St. Andre,

8    the critical decisionmaker.  While this is no doubt a source of frustration to plaintiff, such an

9    interview was not constitutionally required under the circumstances.  By presenting plaintiff with

10   the opportunity to submit to the IGI written objections to the evidence being used to support his

11   validation, defendants satisfied the requirement that plaintiff be given an opportunity to be heard

12   by the decisionmaker.  *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *overruled on other*

13   *grounds by Sandin v. Conner*, 515 U.S. 472 (1995) ("Ordinarily a written statement by the inmate

14   will accomplish this purpose . . . . So long as this occurs, and the decisionmaker reviews the

15   charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.").

16   Accordingly, plaintiff's factual allegations fail to show that defendants violated the constitutional

17   requirements that plaintiff be given notice and an opportunity to be heard.

18           Nevertheless, defendants' motion to dismiss must be denied with regard to plaintiff's due

19   process claims for other reasons.  Plaintiff challenges the "some evidence" requirement to support

20   the gang member classification and treatment he received.  The record currently before the court

21   does not enable the court to determine whether the three confidential statements allegedly used in

22   making the validation determination constitute "some evidence."  Defendants assert that under the

23   minimally stringent "some evidence" standard any one of the three evidentiary items used to

24   validate plaintiff suffice to meet the Fourteenth Amendment's due process requirements.  ECF

25   No. 22-1 at 15.  However, the alleged evidentiary sources have yet to be presented to the court by

26   either party at this early stage in the proceedings, therefore making a determination regarding

27   whether they constitute "some evidence" premature and improper.  *See Lopez v. Valdez*, 2007 WL

28   1378017 at *4 (N.D. Cal. May 10, 2007) (stating that the "some evidence" standard "requires the

1    court to examine each piece of evidence that led to the validation decision to see if there was

2    some evidence to support the decision").  In assessing defendants' motion to dismiss, the court is

3    bound to the allegations of plaintiff's complaint and while the existence of the three confidential

4    statements is mentioned in the complaint, their substance is not.  Furthermore, plaintiff alleges

5    that all three pieces of evidence fall below the "some evidence" threshold and alleges specific

6    deficiencies for each piece of evidence.  These allegations are sufficient to defeat defendants'

7    motion to dismiss because, if taken as true, they would demonstrate a failure to provide due

8    process in connection with his gang validation that occurred here.  In short, if true, plaintiff's

9    allegations show that defendants lacked "some evidence" to substantiate their decision.  *See*

10   *Bruce*, 351 F.3d at 1287-88.

11        Finally, there is insufficient information regarding whether the three confidential

12   statements defendants relied upon were sufficiently reliable or whether there exists a prison

13   official's affirmative statement that safety considerations prevent the disclosure of the informants'

14   names as is required under *Zimmerlee*.  831 F.2d at 186-87.  The court cannot make a

15   determination as to whether there was "some evidence" substantiating plaintiff's validation at this

16   time without having the evidence that was used to validate plaintiff.  Whether these sources can

17   be submitted to the court as evidence in the context of a fuller record on a motion for summary

18   judgment, or if necessary at trial, and whether that record will established that the statement are

19   reliable, remains to be seen.  *See Bruce*, 351 F.3d at 1288 (upholding district court's grant of

20   summary judgment in favor of defendants on the issue of whether three pieces of evidence,

21   including a confidential statement, used to validate the plaintiff as a prison gang member

22   constituted "some evidence"); *Lopez*, 2007 WL 1378017 at *4 (summary judgment in defendants'

23   favor on the issue of whether there was "some evidence" after the court had conducted an in

24   camera review of two confidential memorandums that defendants had used to validate plaintiff as

25   a gang member).  But at this point in the litigation, the record is insufficient for the court to make

26   an adequate determination regarding this issue.  As noted, this matter is before the court on a Rule

27   12(b)(6) motion to dismiss.  As pleaded in the complaint, plaintiff has alleged facts sufficient to

28   /////

                                                    17

1   state a claim.  Accordingly, defendants' motion to dismiss should be denied with respect to

2   plaintiff's due process claims under the Fourteenth Amendment.

3          B.   State Due Process

4          In his third claim, plaintiff alleges that defendants violated his due process rights under

5   Article 1 sections 7 and 15 of the California Constitution.  ECF No. 1 at 16.  Defendants argue

6   that plaintiff has failed to comply with the California Tort Claims Act's ("CTCA") requirement

7   that plaintiff first present his claim to the California Victim Compensation and Government

8   Claims Board ("Board") before presenting it in the present lawsuit.  ECF No. 22-1 at 34-36.

9          When adjudicating a supplemental state law claim, the federal courts must apply state

10   substantive law.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  The CTCA

11   requires that a tort claim against a public entity or its employees be presented to the California

12   Victim Compensation and Government Claims Board, formerly known as the State Board of

13   Control, no more than six months after the cause of action accrues.  *See* Cal. Gov't Code

14   §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim and action on, or

15   rejection of, the claim are conditions precedent to suit.  *Mangold v. California Pub. Utils.*

16   *Comm'n*, 67 F.3d 1470, 1477 (9th Cir.1995).

17          Here, defendants request the court to take judicial notice of records from the Board

18   confirming that plaintiff did not timely file a claim regarding his state law causes of action against

19   any of the defendants named in this case.  *See* ECF No. 23.  However, plaintiff concedes in his

20   opposition papers that he has not presented his claim to the Board.  ECF No. 33 at 15.  Therefore,

21   judicial notice of the Board's records is unnecessary.  Furthermore, the six month window in

22   which plaintiff had to file his present state law claims with the Board has passed.  Accordingly,

23   plaintiff's third claim must be dismissed without leave to amend as any amendment to this claim

24   would be futile.  *See California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d

25   1466, 1472 (9th Cir. 1988) ("Valid reasons for denying leave to amend include undue delay, bad

26   faith, prejudice, and futility."); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

27   /////

28   /////

1    C. Equal Protection

2    Plaintiff asserts two claims based on the Equal Protection Clause of the Fourteenth

3    Amendment, his fourth and seventh claims.  In his fourth claim, plaintiff alleges that unspecified

4    defendants denied him equal protection of the law under the Fourteenth Amendment by

5    intentionally treating him differently than other similarly situated inmates by refusing to combine

6    the second and third pieces of evidence used to validate plaintiff into a single evidentiary source.

7    ECF No. 1 at 17.  A liberal construction of the facts alleged in the complaint suggests that

8    plaintiff brings this claim specifically against defendant Gower.  *See id.* at 13 ("Defendant R.

9    Gower Chief Deputy Warden intentionally and arbitrarily denied to combine the above two

10   source items to constitute one source item towards plaintiff's validation as a prison gang affiliate

11   as defendant did for inmate Valentine.").

12   In his seventh claim, plaintiff alleges that defendants intentionally treated him like an

13   inmate who had committed a disciplinary infraction, even though he was being segregated for

14   administrative purposes, thus denying plaintiff the privileges afforded to other general population

15   inmates who have not been convicted of disciplinary infractions.  *Id.* at 18.

16   The Equal Protection Clause requires the State to treat all similarly situated people

17   equally.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  State prison

18   inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment.

19   *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Lee v. Washington*, 390 U.S. 333, 334

20   (1968)).  This does not mean, however, that all prisoners must receive identical treatment.  *See*

21   *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  "In the prison context . . . even fundamental rights

22   such as the right to equal protection are judged by a standard of reasonableness-specifically,

23   whether the actions of prison officials are 'reasonably related to legitimate penological interests.'"

24   *Walker*, 370 F.3d at 974 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Washington*

25   *v. Harper*, 494 U.S. 210, 224 (1990) (equal protection concerns fall under *Turner*).

26   Defendants' only argument with respect to plaintiff's Equal Protection claims is that

27   plaintiff's allegations show that he was afforded the same due process protections while

28   undergoing the gang validation process as all other inmates deemed to be gang affiliates.  ECF

19

1    No. 22-1 at 25-26.  This argument appears to only address plaintiff's fourth claim, and to that

2    extent it is without merit.  Defendants cite to *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) to

3    support their argument.  In *Bruce*, the U.S. Court of Appeals for the Ninth Circuit upheld a grant

4    of summary judgment to defendants regarding an inmate's equal protection claim that he was not

5    afforded the same procedures that were provided to other inmates undergoing the gang validation

6    process.  *Bruce*, 351 F.3d at 1288.  The court determined that plaintiff had been afforded the

7    minimum process required under the Due Process Clause and, therefore, he received the same

8    process all gang affiliates are due.  *Id.*  Specifically, the court found that plaintiff had received

9    adequate notice, an opportunity to be heard, and that there was "some evidence" to substantiate

10   plaintiff's validation.  *Id.* at 1287-88.  Accordingly, the court concluded that any purported

11   differences in treatment the plaintiff complained of did not rise to the level of an equal protection

12   violation.  *Id.* at 1288.

13        As stated above, here, the court is currently unable to adequately address whether plaintiff

14   received the process he was due in connection with his validation determination because

15   plaintiff's allegations do not show that there was "some evidence" to substantiate defendants'

16   validation decision.  Therefore, unlike in *Bruce*, the court cannot find that plaintiff was afforded

17   the process he was due in connection with his gang validation because it cannot determine

18   whether it was substantiated by "some evidence."  For this reason, the defendants' argument is

19   unpersuasive.  Accordingly, defendants' motion to dismiss should be denied with respect to

20   plaintiff's fourth claim.

21        Defendants do not address plaintiff's seventh claim, in either their motion to dismiss or

22   their reply, that he was denied equal protection because he was subjected to the same restrictions

23   as inmates who have committed disciplinary infractions while "general population inmates and/or

24   those inmates who are disciplinary free" are not subject to these restrictions.  In his opposition,

25   plaintiff clarifies that, in his seventh claim, he is not challenging the process he was afforded in

26   connection with the decision to place him in administrative segregation.  Rather, he is challenging

27   the CDCR's policies that lead to administratively segregated inmates, such as plaintiff, being

28   treated like inmates who are segregated for disciplinary reasons instead of being treated like other

1   inmates who have not received disciplinary infractions.  Plaintiff argues that this difference in

2   treatment is not reasonably related to a legitimate penological interest.  As stated above,

3   defendants do not address the allegations in the seventh claim, nor do they attempt to counter

4   plaintiff's allegation that the CDCR policies attacked in this claim are not reasonably related to a

5   legitimate penological interest.

6          When taken as true, plaintiff's alleged facts give rise to a cognizable claim under the

7   Fourteenth Amendment's Equal Protection Clause.  *See Williams v. Lane*, 851 F.2d 867, 88-82

8   (7th Cir. 1988) (upholding district court's decision that prison's policies creating disparate living

9   conditions and programming for inmates in protective custody in comparison to those in the

10   general population violated plaintiff's equal protection rights when there was no legitimate

11   penological purpose for the disparate treatment).  Accordingly, defendants' motion to dismiss

12   should be denied with respect to plaintiff's seventh claim.

13          D.   First Amendment

14          Plaintiff alleges in his fifth claim that defendants violated his First Amendment right to

15   association "by basing his confinement in the SHU wholly or in part upon regulations and

16   policies which classify as impermissible association with other prisoners even where such

17   association with other prisoners is not in furtherance of prison gang activity . . . [and the

18   regulations are] not reasonably related to any legitimate penological interest."  ECF No. 1 at 17.

19   In his opposition, plaintiff explains that his fifth claim is made against Matthew Cate, the

20   Secretary of the California Department of Corrections.  Cate was dismissed as a defendant in the

21   screening order issued on February 7, 2013, ECF No. 7.  As discussed below, plaintiff has

22   requested that the screening order be reconsidered in that regard and that plaintiff be permitted to

23   proceed with a claim against the Secretary of the CDCR for injunctive relief solely in the

24   Secretary's official capacity.  For the reasons discussed below, the court recommends that the

25   matter be reconsidered but upon reconsideration this cause of action still fails to present a

26   cognizable claim.

27          Even though an official capacity claim for injunctive relief might otherwise be available

28   against the Secretary, plaintiff's complaint fails to allege facts sufficient to show a violation of his

21

1   right to association under the First Amendment.  As plaintiff clarifies in his opposition, he asserts

2   his First Amendment claim against the Secretary of the CDCR in his official capacity in

3   connection with plaintiff's challenge to the constitutionality of CDCR "regulations and policies

4   which classify as impermissible association with other prisoners even where such association

5   with other prisoners is not in furtherance of prison gang activity."  ECF No. 1 at 17.  However,

6   plaintiff does not state with any specificity which CDCR regulations or policies he is contesting

7   and how they actually make such an impermissible classification.  Moreover, other courts that

8   have addressed on the merits the constitutionality of the CDCR's regulations permitting gang

9   validation to be based on inmate association have found these regulations to be constitutional

10   under the First Amendment.  *Stewart v. Alameida*, 418 F. Supp. 2d 1154 (N.D. Cal. 2006)

11   (granting summary judgment for CDCR officials on plaintiff's First Amendment right to

12   association claim attacking CDCR regulations providing for gang validation based on inmate

13   association because the regulations bore a rational relationship to the penological interest in

14   institutional security under the *Turner* test); *see also Martinez v. Fischer*, 2011 WL 4543191

15   (E.D. Cal. Sept. 28, 2011) (applying the analysis set forth by the court in *Stewart* to grant

16   summary judgment for CDCR officials on plaintiff's claim that a CDCR regulation regarding

17   gang validation procedures was unconstitutionally vague and overbroad).  Thus, it would appear

18   that plaintiff's claim lacks merit.  However, the courts that have addressed CDCR's regulations

19   on First Amendment right to association grounds have addressed individual regulations.  As noted

20   above, plaintiff does not state in his complaint which specific regulations he claims are

21   unconstitutional.  Accordingly, plaintiff's fifth cause of action should be dismissed with leave to

22   amend.

23       In a surreply filed on October 15, 2013, ECF No. 37 at 4, plaintiff explains that his fifth

24   claim also pertains to supervisory defendants other than Cate.  Specifically, he states that he also

25   brings his fifth claim against "Suzan Hubbard, R. Gower, D. Davey, R.S. Marquez, J. Harrison,

26   R. St. Andre, S. Kokkonen, etc."  *Id.*  Defendants have filed a motion to strike plaintiff's surreply,

27   ECF No. 41, which is addressed below.  For the reasons stated below, the surreply is not

28   permitted by the local rules and it will be disregarded.  Nevertheless, even with plaintiff's

1   clarification regarding these defendants, the complaint fails to set forth allegations sufficient to

2   support a First Amendment claim against any of them.  Accordingly, the fifth claim for relief

3   should be dismissed with leave to amend.

4        E.  Failure to Train

5        In his sixth claim, plaintiff alleges that the defendants, acting in supervisory roles, failed

6   to adequately train and supervise their subordinates.  Under section 1983, plaintiff must

7   demonstrate that the defendants holding supervisory positions personally participated in the

8   deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  There is no

9   respondeat superior liability, and each defendant is only liable for his or her own misconduct.

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  A supervisor may be held liable for the

11  constitutional violations of his or her subordinates only if he or she "participated in or directed the

12  violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d

13  1040, 1045 (9th Cir. 1989).

14       Here, plaintiff has failed to identify actions by supervisory personnel that contributed to

15  any harm due to a failure to train or supervise and the complaint fails to state a claim for a

16  violation of plaintiff's constitutional rights.  Rather, plaintiff merely alleges that unspecified

17  supervisory defendants[5] "participate[d] in the enforcement of the validation policies," "turned a

18  blind eye to subordinates' abuse of the validation policies," "breached their duties to legally

19  administer the prison, and to train and supervise subordinates," and "were deliberately indifferent

20  to the violation of plaintiff's rights."  ECF No. 1 at 8, 18.  While pursuing an official capacity

21  claim for injunctive relief to overturn and enjoin an allegedly unconstitutional policy or practice

22  can be appropriate, here the text of the complaint suggest that plaintiff is attempting to use a

23  failure to train theory as a vehicle to hold supervisory defendants liable for monetary damages for

24

25  [5] In a surreply filed on October 15, 2013, ECF No. 37, plaintiff identifies defendants he
    refers to as supervisory defendants.  *Id.* at 4.  They are "Suzan Hubbard, R. Gower, D. Davey,

26  R.S. Marquez, J. Harrison, R. St. Andre, S. Kokkonen, etc."  *Id.*  Defendants move to strike the
    surreply, ECF No. 41, which is addressed below.  For the reasons discussed below, the surreply

27  will be disregarded.  Nevertheless, even with plaintiff's clarification of who constituted the
    "supervisory defendants" the fails to set forth allegations sufficient to support a claim against

28  these defendants premised on a failure to train or supervise.

1   acts of subordinates.  Those acts are the placing and retaining of plaintiff in the SHU, allegedly

2   knowing that there was no proper basis for doing so.  While this supervisory liability claim seeks

3   to hold the supervisors responsible, no specific allegations are made to show that these

4   supervisors actually participated in alleged wrongful acts.  "Vague and conclusory allegations of

5   official participation in civil rights violations are not sufficient to withstand a motion to dismiss."

6   *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of*

7   *Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

8          There are no allegations set forth in the complaint supporting a claim under section 1983

9   against supervisory personnel.  It is not clear whether the defects in plaintiff's claim could be

10   cured by amendment.  Accordingly, plaintiff's sixth cause of action should be dismissed with

11   leave to amend.  *Potter v. McCall,* 433 F.2d 1087, 1088 (9th Cir. 1970) (quoting *Armstrong v.*

12   *Rushing,* 352 F.2d 836, 837 (9th Cir. 1965)) (holding that inmate plaintiffs proceeding with civil

13   rights claims are entitled to "an opportunity to amend the complaint to overcome the deficiency

14   unless it clearly appears from the complaint that the deficiency cannot be overcome by

15   amendment.").

16          F.   Other Claims

17          The complaint appears to rely on allegations that the procedures used by prison officials

18   failed to comply with the procedures agreed to in the *Castillo* settlement agreement.  Assuming

19   plaintiff purports to base his claims on those allegations, they fail as a matter of law.  The

20   violation of consent decrees, settlements, or injunctions in other cases does not provide liability in

21   this action.  *See Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999); *Coleman v. Wilson*, 912

22   F. Supp. 1282, 1294 (E.D. Cal. 1995).  Additionally, the *Castillo* settlement "provides that

23   alleged noncompliance with the agreement cannot be the basis for granting an individual inmate

24   relief regarding his gang validation."  *Garcia v. Stewart*, No. C 06–6735 MMC (PR), 2009 WL

25   688887, *7 (N.D. Cal. Mar. 16, 2009) (citing Settlement Agreement § 30c).

26          Furthermore, to the extent that plaintiff attempts to bring any claims solely based on

27   defendants' violation of  prison rules and policies, *see* ECF No. 33 at 12-14, the claims must be

28   dismissed.  Those prison rules and policies or alleged violations of the Title 15 regulations do not

1   give rise to a cause of action under § 1983.  Section 1983 provides a cause of action for the

2   deprivation of federally protected rights.  "To the extent that the violation of a state law amounts

3   to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal

4   Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385,

5   1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir.

6   1996)); *see Davis v. Kissinger*, No. CIV S–04–0878 GEB DAD P, 2009 WL 256574, *12 n. 4

7   (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.

8   *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d

9   427, 430 (8th Cir. 1997)).

10        G.  Defendants Davey, Furtado, Garcia, Gower, Hubbard, Tamplen, and Williams

11        Defendants Davey, Furtado, Garcia, Gower, Hubbard, Tamplen, and Williams argue that

12   they should be dismissed from this action because plaintiff fails to allege facts showing a causal

13   connection between their actions and plaintiff's gang validation.  ECF No. 22-1 at 27-28.  They

14   argue that plaintiff's claims against them "are based solely on their supervisory responsibility"

15   and that plaintiff's allegations show that they did not participate in the gang validation process.

16   *Id.* at 28.

17        With respect to Gower, the argument is without merit.  As stated above, plaintiff has at the

18   very least stated a cognizable equal protection claim against Gower.

19        Defendants' argument with respect to the other six defendants is also problematic.

20   According to the allegations of the complaint, all of these defendants were a part of the different

21   ICCs that reviewed the evidence regarding plaintiff's gang validation and assessed plaintiff to

22   terms in the ASU and the SHU.  ICC review is a part of the process provided to inmates during

23   the gang validation process.  Cal. Code Regs. tit. 15, § 3378(h) ("A classification committee is

24   authorized to return an inmate to a SHU based upon the restoration of the inmate's gang status

25   and a determination that the inmate's present placement endangers institutional security or

26   presents a threat to the safety of others.  As provided at section 3341.5, placement in a SHU

27   requires approval by a classification staff representative.").  While the members of the ICCs were

28   not the "final decisionmakers" regarding plaintiff's gang validation status, they constituted part of

1   the process provided to plaintiff through the gang validation process.  *See Madrid*, 889 F. Supp. at

2   1276-77 (observing the potential for ICC proceedings in the gang validation context to be

3   "hollow gestures" under certain circumstances because "[gang] validation is usually the

4   functional equivalent of deciding that the inmate will be transferred to the SHU for gang

5   affiliation."); *see also Avina v. Medellin*, CIV S-02-2661-FCD KJ, 2010 WL 3516343 at *7-*8

6   (E.D. Cal. Sept. 3, 2010).  Therefore, there is simply no merit to the argument that "none of these

7   defendants participated in the validation process."  Indeed, if the complaint's allegations are taken

8   as true, they did.

9         Furthermore, defendants' contention that plaintiff's claims against all of these defendants

10   are based solely on their supervisory responsibility is also without merit.  The complaint sets out

11   specific allegations regarding the actions of each of these defendants.  It includes allegations

12   showing their individual connections to the decision to place plaintiff in the SHU for an indefinite

13   period of time and the allegedly inadequate process they provided in the making of that

14   determination.  Accordingly, plaintiff's complaint states allegations against these defendants, that

15   when taken as true, sufficiently raise a cognizable due process claim against each individual.

16   Whether plaintiff will have the evidence to survive summary judgment remains to be seen.  But

17   defendants' contention that these seven defendants must be dismissed for failure to state a claim

18   simply misreads the complaint.

19         H.  Qualified Immunity

20         All defendants contend that they are entitled to qualified immunity for their challenged

21   conduct because they did not violate any of plaintiff's constitutional rights and their actions were

22   reasonable under the relevant constitutional standards.

23         "The doctrine of qualified immunity protects government officials 'from liability for civil

24   damages insofar as their conduct does not violate clearly established statutory or constitutional

25   rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223,

26   231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Resolving the defense of

27   qualified immunity involves a two-step process:  the court must decide 1) whether the plaintiff

28   has alleged or shown a violation of a constitutional right; and 2) whether the right at issue was

clearly established at the time of defendant's alleged misconduct.[6]  "Qualified immunity is

applicable unless the official's conduct violated a clearly established constitutional right."

*Pearson*, 555 U.S. at 232.  To be "clearly established" "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

      The court need not reach defendants' contention with respect to plaintiff's fifth and sixth

claims.  Where, as here, the facts do not state a cognizable constitutional claim against a

defendant, the court need not reach that defendant's qualified immunity defense.  *Saucier v. Katz*,

533 U.S. 194, 201 (2001).

      However, as to the due process and equal protection claims, defendants' cursory argument

for qualified immunity argument is simply that the allegations of the complaint are inadequate to

allege a violation of plaintiff's rights.  For the reasons discussed above, the complaint does

sufficiently allege disparate treatment and the absence of both an adequate process and evidence

to warrant plaintiff's placement and retention in the SHU.  The clearly established law regarding

the process due in connection with the placement of an inmate in administrative segregation

based on gang validation mandates that there be "some evidence" to support such a decision.  *See*

*Hill*, 472 U.S. at 455; *Bruce*, 351 F.3d at 1287-88; *Toussaint*, 801 F.2d at 1105.  Much of

defendants' argument pertain to whether plaintiff will be able to prove his allegations and are

more properly considered on a motion for summary judgment which provides standards to test

precisely that question.  However, at this stage the court cannot sufficiently determine whether

the evidentiary sources defendants relied on to substantiate plaintiff's validation constituted

"some evidence," and therefore the court cannot yet adequately address the issue of whether

defendants acted reasonably in light of the clearly established due process requirements.

      Plaintiff's fourth claim, made under the Equal Protection Clause, is based on the premise

that plaintiff did not receive the same process that another, similarly-situated inmate received in

connection with his validation and placement in to the SHU.  Specifically, plaintiff alleges that

---

[6] Following the decision in *Pearson*, courts are not required to address both steps of the
process in that order.  *See Pearson*, 555 U.S. at 811.

1   defendant Gower refused to combine evidentiary items two and three into a single validation

2   source when plaintiff appealed his validation determination when Gower had previously

3   combined two similar sources for another inmate under similar circumstances.  Under *Bruce*, an

4   equal protection violation may be found when officials deny an inmate the same procedures it

5   affords other suspected gang affiliates during the validation process and the lesser process

6   afforded to the inmate falls below the standards required by the Due Process Clause.  351 F.3d at

7   1288.  Under this standard, plaintiff's claim requires a determination of whether there was "some

8   evidence" to substantiate his gang validation and whether there is a legitimate reason for any

9   disparate treatment in order to properly assess whether the disparate treatment in the process

10  resulted in an equal protection violation.  For the reasons stated above, the court is unable to make

11  such a determination based on the limited record before it at this stage.  Accordingly, defendants'

12  motion to dismiss pursuant to Rule 12(b)(6) based on qualified immunity should be denied with

13  respect to plaintiff's fourth claim.

14        Finally, defendants fail to address plaintiff's seventh claim, also based on the Equal

15  Protection Clause, either in substance or on qualified immunity grounds.  Defendants merely

16  assert that no constitutional violations occurred and that "plaintiff has not shown that it was

17  sufficiently clear to a reasonable officer that Defendants' actions violated the constitution."  ECF

18  No. 22-1 at 37.  However, "qualified immunity is an affirmative defense [ ] and the burden of

19  proving the defense lies with the official asserting it."  *Id.* at 819; *Houghton v. South*, 965 F.2d

20  1532, 1536 (9th Cir. 1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 819 (1982) (internal

21  citations omitted)).  As stated above, the court finds that plaintiff alleges in his seventh claim

22  facts sufficient to state an equal protection claim.  Furthermore, defendants do not show how

23  under plaintiff's factual allegations they acted reasonably in light of clearly established law with

24  respect to plaintiff's seventh claim.  Consequently, the court finds that defendants have failed to

25  meet their burden with regard to plaintiff's seventh claim.

26  /////

27  /////

28  /////

1  For the foregoing reasons, defendants' contention that they are entitled to qualified

2  immunity with respect to plaintiff's federal due process and equal protection claims should be

3  denied without prejudice to defendants' ability to raise this defense later in a Rule 56 motion, or if

4  necessary, at trial.

5  IV.  PLAINTIFF'S MOTION TO REINSTATE MATTHEW CATE AS A DEFENDANT

6  In a motion filed September 11, 2013, plaintiff requests that the court reinstate Matthew

7  Cate, the Secretary of the CDCR, as a defendant to this action.[7]  ECF No. 32.  The court's

8  screening order issued February 7, 2013, dismissed Cate as a defendant along with several others

9  originally named as defendants, reasoning that the complaint made no charging allegations

10  against any of these defendants.  ECF No. 7 at 3.  Defendants argue in their opposition to the

11  motion that plaintiff's request is untimely and, in any event, fails to allege facts sufficient to

12  support any claims against Cate.  ECF No. 36.

13  Plaintiff claims in his motion that he was unaware that the court had permanently

14  dismissed all claims against Cate.  He states that he thought that the court had only dismissed his

15  claim for money damages and retained his claim for injunctive relief against Cate in his official

16  capacity.  ECF No. 32 at 1.  Plaintiff claims that he must have Cate named as a defendant for

17  purposes of obtaining prospective injunctive relief to enjoin the continuance of certain policies

18  and procedures regarding gang validation and the placement and retention of validated inmates in

19  the SHU.  *Id.* at 2.

20  Defendants argue that plaintiff motion is untimely under Local Rule 304(b) and Rule 72

21  of the Federal Rules of Civil Procedure as an objection to the court's screening order that resulted

22  in Cate's dismissal.  ECF No. 36 at 3.  Under those rules, any objections to a Magistrate Judge's

23  orders or findings and recommendations are due within fourteen days after service on the parties.

24  While it is true that the motion effectively seeks reconsideration of the earlier determination in the

25  screening order and plaintiff did not timely file objections to that order, there is an important

26

27  [7] The court notes that Matthew Cate has resigned from his position as Secretary of the CDCR and has since been succeeded by Jeffrey A. Beard.  Accordingly, the court will construe plaintiff's request to reinstate Cate as a request to add the current Secretary of the CDCR as a defendant in his official capacity, and not as a request to specifically add Cate as a defendant.

28

1   difference between an order dismissing a claim based on a fully briefed dispositive motion and a

2   screening order that permits a plaintiff to proceed on some claims as to some parties but not

3   others.  Based on the limited information before the court at the time of the screening order, and

4   without the benefit of briefing, the court discerned no basis for plaintiff to proceed on a claim as

5   to Cate.  Plaintiff has now articulated a basis; i.e., a claim for injunctive relief against Cate in his

6   official capacity.  When plaintiff's motion is taken in that context, it is better characterized as a

7   motion to add a nonparty as a defendant under Rule 21 of the Federal Rules of Civil Procedure.[8]

8   Under Rule 21, the court may, in its sound discretion, add a party to an action either on motion or

9   on its own.  Furthermore, under Federal Rule of Civil Procedure 19(a)(2), the court must order the

10  joinder of any person defined as a "required party" when that party has not already been joined as

11  a party to the action.  A person must be deemed a "required party" for purposes of Rule 19 when,

12  "in that person's absence, the court cannot accord complete relief among existing parties," that

13  person is subject to service of process, and that person's joinder will not deprive the court of

14  subject matter jurisdiction.  Fed. R. Civ. P. 19(a)(1).  Therefore, plaintiff's motion will be

15  considered on its merits.

16          As stated in the February 7, 2013 screening order, plaintiff's complaint fails to make any

17  charging allegations against Cate.  However, in his opposition to the motion to dismiss, plaintiff

18  explains that the fifth claim in his complaint and "all other claims having to do with CDCR rules

19  and policies and failure to train/supervise subordinates" are alleged against Cate in his official

20  capacity as Secretary of the CDCR.  ECF No. 33 at 10.  Furthermore, plaintiff clarifies in his

21  motion to reinstate the Secretary as a defendant that he "is asking for injunct[ive] relief having to

22  do with the policies and procedures regarding gang validation and the placement/retention of

23  gang affiliates in the SHU" and that he seeks to reinstate the Secretary in order to achieve such an

24  injunction.  ECF No. 32.  With these clarifying statements in mind, the court construes the

25  allegations of plaintiff's complaint to include claims for prospective injunctive relief against the

26  /////

27  _____

28      [8] Federal Rule of Civil Procedure 21 provides: "On motion or on its own, the court may at
    any time, on just terms, add or drop a party. The court may also sever any claim against a party."

1  current Secretary of CDCR concerning the challenged CDCR policies and procedures plaintiff

2  identifies in his allegations.

3      While, for the reasons discussed above, plaintiff fails to state cognizable claims in his

4  third, fifth and sixth causes of action, he does state cognizable claims under the Due Process and

5  Equal Protection Clauses of the Fourteenth Amendment in his first, second, fourth, seventh, and

6  eighth causes of action.  Accordingly, the Secretary of the CDCR's presence is necessary if the

7  injunctive relief plaintiff seeks through his remaining causes of action is to be obtained.  *See e.g.*,

8  *Hand v. Briggs*, 360 F. Supp. 484, 485 (N.D. Cal. 1973) (court noted in prisoner's action against

9  women guards, arising out of their employment as guards, that the Secretary of the CDCR was

10  one who ought to be party if complete relief was to be accorded between those already parties);

11  *Madrid*, 889 F. Supp. 1146 (noting that the Secretary of the CDCR was named in his official

12  capacity as a defendant in inmate plaintiffs' suit challenging the constitutionality of and seeking

13  injunctive relief against a broad range of prison practices, including the CDCR's regulations

14  regarding gang validation procedures).  Because of this, Secretary Beard's presence is required in

15  order for the court to afford complete relief among the existing parties in the present case.

16  Furthermore, the Secretary is subject to service of process and his joinder to this action would not

17  deprive the court of subject-matter jurisdiction.  Accordingly, it appears that the Secretary of the

18  CDCR is a "required party" under Rule 19.  Therefore, pursuant to Rule 19(a)(2), he must be

19  added as a party to this action.  For this reason, plaintiff's motion should be granted to the extent

20  that plaintiff's remaining cognizable claims are predicated on seeking prospective injunctive

21  relief against the Secretary of the CDCR in his official capacity concerning the challenged CDCR

22  policies and procedures plaintiff identifies in his complaint.

23  V.  DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SURREPLY

24      On November 8, 2013, defendants filed a motion to strike plaintiff's surreply from the

25  record.  ECF No. 41.  Defendants argue that the October 15, 2013 surreply, ECF No. 37, was filed

26  after the close of the time to file responsive briefing to defendants' motion to dismiss under Local

27  Rule 230(l).  ECF No. 41 at 3-4.

28  /////

1    There is no provision in the local rules for a surreply.  Local Rule 230(l) provides for a

2  moving brief, an opposition, and a reply.  Briefing for motions in prisoner actions is final after the

3  time for reply has expired.  Defendants filed their reply to plaintiff's opposition to defendants'

4  motion to dismiss on September 11, 2013, thus closing the time for further response regarding the

5  motion.  Plaintiff filed his surreply over a month later and without the court's leave to do so.

6  Accordingly, plaintiff's surreply will be disregarded.

7    Based on the foregoing, IT IS HEREBY ORDERED that defendants' November 8, 2013

8  motion to strike plaintiff's surreply, ECF No. 41, is granted to the extent that plaintiff's surreply

9  will be disregarded.

10    Furthermore, IT IS HEREBY RECOMMENDED that:

11    1.  Defendants' July 12, 2013 Motion to Dismiss, ECF No. 22, be granted in part and

12        denied in part:

13        a.  Plaintiff's state due process claims under Article 1 sections 7 and 15 of the

14            California Constitution (claim 3) be dismissed without leave to amend;

15        b.  Plaintiff's First Amendment right to association claim (claim 5) be dismissed

16            with leave to amend;

17        c.  Plaintiff's claim based on a failure to train theory (claim 6) be dismissed with

18            leave to amend;

19        d.  Plaintiff's claims be dismissed without leave to amend to the extent that they

20            rely solely on the *Castillo* settlement agreement or violations of state prison

21            policies and regulations; and

22        e.  Defendants' motion to dismiss be denied with respect to plaintiff's claims

23            under the Due Process and Equal Protection Clauses of the Fourteenth

24            Amendment (claims 1, 2, 4, 7, and 8).

25  /////

26  /////

27  /////

28  /////

2. Plaintiff's motion to reinstate Cate as a defendant, ECF No. 32, be granted to the extent that plaintiff seeks to add the Secretary of the CDCR as a defendant in his official capacity with regard to plaintiff's request for prospective injunctive relief concerning the challenged CDCR policies and procedures plaintiff identifies in his complaint.

3. The case be referred back to the undersigned for the issuance of an order directing service of the complaint on the Secretary of the CDCR.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE